Nat H. Hentel, J.
On January 28, 1973, plaintiffs contracted with defendant catering establishment to handle the arrangements for the marriage of one of the plaintiffs to her then fiance on January 20, 1974, almost a full year in advance. A one-page printed and typewritten contract was entered into signed by one of the plaintiffs, Milton Bogatz, and by defendant’s manager. It called for the use of defendant’s Crystal Room from noon to 12:30 p.m., and the Royal Room from noon to 5 p.m. on the day of the proposed wedding. It also called for payment of $750 on account on or before July 20, 1973, which was paid, and which sum was to be credited towards the full wedding catering contract price of $1,550, plus sales tax to cover 100 people in guaranteed attendance, the menu, and other details. At the very bottom of the one-page contract, and in much smaller print than the printed and typewritten portions appears this legend: "In the event that this contract is cancelled, the undersigned is liable for the full amount due under this contract. Full payment must be made on or before the date of final arrangements”, which under the contract was January 16, 1974.
On September 19, 1973, four months before the projected wedding, plaintiff Milton Bogatz called defendant’s manager on the telephone and told him that his daughter’s engagement had been broken and the wedding was to be cancelled. Mr. Bogatz testified that the manager told him "don’t worry about a thing; you’ll get all your money back; just send me a letter to that effect.” His testimony is uncontroverted, and defendant *1054 rested its case without producing the manager to testify to the contrary, and without giving a satisfactory explanation of why he was not called to testify. (See Holiday of Plain view v Bernstein, 76 Misc 2d 381, 384.) On the same day, September 19, 1973, Mr. Bogatz mailed a letter (in evidence) which stated "I am cancelling the wedding contract. * * * Please (re-)book the Crystal * * * and * * * Royal Room(s) from 12 noon to 5:00 p.m. on January 20, 1974. As agreed, our deposit ($750) will be forwarded to me at (my) * * * address upon booking of same.”
Defendant’s manager replied on September 24, 1973, by his letter (in evidence) "We shall bend every effort to relet the room. I would like to clarify one point, however. In the event we are able to run another party of the same value in place of the cancelled wedding, we shall return all deposits paid us over and above $200. That sum is necessary tp cover our sales costs.” (Emphasis supplied.)
Neither the $750 pursuant to plaintiffs letter, nor the $550 pursuant to defendant’s letter has been repaid even though the latter sum has been demanded. Mr. Bogatz further testified that he was present at defendant’s establishment on January 20, 1974, between noon and 12:30 p.m.; that he saw defendant’s manager there, and that he saw about 100 people in the Crystal Room for a wedding anniversary party who were being first served their meal, and that a three-piece band was playing for dancing. He does not know of his own knowledge whether any party was booked for the Royal Room. Defendant introduced evidence that no party had been booked in the Royal Room for the hours of noon to 5 p.m. that date, but also did not assert proof to the effect that it had bent "every effort to relet” this room. Defendant’s president testified that it "endeavored to relet the Royal Room from September 19, 1973 until January 20, 1974, but that no one requested the Royal Room during that period for 100 or more guests.” But there is no credible proof of "bending every effort to relet” which, after all, means that defendant had promised to direct its entire energies and attention, and its utmost diligence to the reletting of the Royal Room. Certainly this could have been accomplished with energetic effort over a four-month period of time. (See Mindell, Consumer and the Caterer, NYLJ, Jan 9-10, 1975.)
Further, defendant has failed to prove what its "sales costs” were as referred to in its letter of September 24, 1973, and *1055 which were allegedly incurred as a result of the cancellation. Defendant’s president alluded to the manager’s salary, bookkeeping, and computer costs to process the installment payments of plaintiffs deposit of $750, and the one letter it wrote on September 24, 1973 to the plaintiff. Yet, defendant did not proVe how much time its manager spent on plaintiff’s arrangements prior to September 19, 1973, or what the cost of its office overhead was broken down for bookkeeping or typing services. This is very flimsy and unconvincing proof indeed! And this is, nevertheless, defendant’s burden to establish.
Now, as to the wedding arrangements contract itself. (Court’s Exhibit 1 in evidence.) It is silent about any allowance of "$200 to cover sales costs” in the event of a cancellation. Instead it calls for the "full amount due under this contract” in the event of cancellation, or the sum of $1,550, plus New York sales tax of 7%. This would be an unconscionable consequence of cancellation and thus unenforceable. This amounts to a deposit retention provision as a penalty in the event of cancellation, which, in this matter, was based upon a reasonably unforeseeable yet legitimate event, and thus is disproportionate to any unknown and unproved loss suffered by defendant. As such, it is not enforeable as a matter of public policy. (See Uniform Commercial Code, § 2-302.) Certainly, defendant did not reserve $200 as and for damages or sales costs under its written contract as executed by the parties, but later attempted to do so via its unilateral letter of September 24, 1973, which is not binding upon plaintiffs. Defendant has failed to establish any sum as the reasonable damages sustained by it because of the unhappy event which befell plaintiffs. With a cancellation so far in advance of the reserved date, defendant should not be allowed to profit from the misery of plaintiffs when damages have not been proved, which is the burden of defendant. Failure to relet the Royal Room is just another business hazard to be faced and absorbed in the type of business defendant conducts. Defendant has not proved that the month of January is in great demand by party-givers and thus is not catering prime or preferred time. During the eight months the Royal Room was held open for plaintiffs, defendant has not shown that it had to turn away clamoring, prospective renters of the same facilities. By no stretch of the imagination could plaintiffs be considered guarantors of defendant’s anticipated and hoped for profits. (See Lazan v Huntington Town House, 69 Mise 2d 1017, affd 69 *1056 Mise 2d 1019.) Mr. Bogatz testified that he had skimmed through the contract and did not even take notice of the last paragraph, nor did defendant take any pains to draw his attention to it or warn him of its implications if the wedding was canceled. As Mr. Bogatz said, in essence, "We were there on a happy occasion, and were excited about the coming wedding, and no one even thought about the possibility of a cancellation.”
The contract must be interpreted solely from its provisions as set forth on its face. It is not modified by the letter of September 24, 1973, since the letter was not accepted or agreed to by plaintiffs. To require plaintiffs to pay the "full amount due under this contract” would be unconscionable. Besides it is set in small print; nothing is included in the contract to draw the attention of the unwary to its contents such as any legend of warning, or notice to read carefully set in bolder type or in red ink; no copy signed by plaintiffs was furnished to them but only a copy signed by defendant’s manager. Further, it is interesting to note that defendant’s Exhibit A in evidence, the 40th wedding anniversary contract for the substitute party for the Crystal Room on the afternoon of January 20, 1974, is in the exact same form as the contract herein, but it does not contain the printed clause imposing liability in the event of cancellation. This latter contract is dated November 10, 1973, some 10 months later than court’s Exhibit 1 in evidence. Also, the contract here does not even contain a provision by which the patron acknowledges having read its terms.
Under all the circumstances, court awards judgment to plaintiffs in the sum of $750, plus interest from September 19, 1973, plus the costs of this action.